**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 CR 611-7 |
| v. ) | |
| ) | |
| KEITH CHATMAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

Defendant Keith Chatman is charged with participating in a racketeering conspiracy with his ten co-defendants (all alleged members of the Four Corner Hustlers gang) beginning no later than the mid-1990s and continuing until about 2017. R. 1 at 3-10. Chatman has moved to suppress statements made to law enforcement officers while Chatman was in custody on a parole violation based on his alleged invocation of his right to counsel. R. 210. For the reasons set forth below, Chatman's motion to suppress is denied.

**Background**

On June 24, 2016, law enforcement officers arrested Chatman for a parole violation. R. 245-1 at 2. He was transported to a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") field office (R. 245-2 at 2) where he participated in a video-recorded interview with three law enforcement officers (R. 245-4).

After offering Chatman water and showing identification (*id.* at 5-6), one of the officers gave Chatman an ATF advice of rights and waiver form and instructed

him to read each right, initial after each right, and sign and print his name if he wanted to talk. *Id.* at 6-7.

Chatman asked what this was all about, and the officer responded that it was about a parole violation. *Id.* at 7. Chatman then described a prior encounter with law enforcement in which he agreed to talk and agents "turned around and told the . . . judge . . . that I told on my . . . self." *Id.* at 8. Another officer interjected, "we just wanta talk to you, man. We have this parole violation warrant." *Id.* He followed up, "We do wanta talk to you about some things. We wanta offer you somethin', okay?" *Id.* at 9. Chatman responded, "Yeah. Alright." *Id.* Chatman then read portions of the advice of rights form out loud, including, "You got a right to remain silent," and "You got a right to talk to a lawyer." *Id.* The video reflects that Chatman initialed next to each right, then put down his pen and sat back.

The first officer then asked again, "would ya like to talk to us?" *Id.* Chatman asked to be told "what it's about." *Id.* The officer said, "we can't answer any of your questions unless you sign that paper right there. And all that, basically, says is that you're willin' to talk to us right now, if that's your waiver o' rights." *Id.* at 9-10. It was immediately after this statement by the officer that Chatman made the critical statement at issue in his motion to suppress: "Uh, I, I think I need, uh, somebody else to be here with me or some'in' first. I can't do that right now." *Id.* at 10.

In response to this statement by Chatman, the officer said, "Okay." *Id.* He then proceeded to obtain biographical information from Chatman. *Id.* at 10-11.

2

The officers later again advised Chatman that they could not discuss anything with Chatman unless he agreed to speak with them. *Id.* at 11-12. Chatman responded, "A'ight, we can talk right now." *Id.* at 13. But Chatman continued to refuse to sign the advice of rights form. *Id.* at 13-16. The officers then re-advised Chatman of his rights, including "the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning." *Id.* at 16. One of the officers asked Chatman to "[a]nswer the question 'yes' or 'no," "Do you still wanta talk to us." *Id.* Chatman said, "Yeah, that's cool." *Id.* Chatman proceeded to make statements regarding his membership in the Four Corner Hustlers gang that the government intends to introduce at trial in this case.

Chatman has moved to suppress his statements from the June 24, 2016 interview based on his alleged invocation of his right to counsel. R. 210. After Chatman's motion was fully briefed, this Court heard oral argument. R. 303.[1] At oral argument, Chatman raised the separate issue of whether he invoked his right to remain silent during the same interview. The Court set a briefing schedule on that issue. *See id.* This opinion addresses only the issue developed by the parties in their first round of briefing—*i.e.*, whether Chatman's statements in the interview should be suppressed based an invocation by Chatman of his right to counsel.

---

[1] Because the parties do not disagree about the words Chatman spoke in his interview, and Chatman did not point to any other disputed issues of fact, the Court declined Chatman's request for an evidentiary hearing. *See, e.g.*, *United States v. Wysinger*, 683 F.3d 784, 795-96 (7th Cir. 2012) (where "[t]he parties do not disagree in any material way about the words that [the defendant] spoke" allegedly invoking counsel, but only about "the legal effect of those words," "that is a question of law").

3

**Analysis**

In his motion to suppress, Chatman argues that he "unequivocally requested an attorney" during the June 24, 2016 interview when he stated: "I think I need, uh, somebody else to be here with me or some'in' first. I can't do that right now." R. 210 at 2. Chatman claims that "all questioning should have ceased" at that point. *Id.* Because it did not, Chatman maintains that all subsequent statements he made should be suppressed.

The government acknowledges that Chatman was in custody at the time of the June 2016 interview and subjected to interrogation. R. 229 at 6 n.3. "Suspects subjected to custodial interrogation must be informed that they have the right to remain silent and to have an attorney present." *United States v. Hampton*, 885 F.3d 1016, 1019 (7th Cir. 2018). "If the suspect invokes his right to counsel, the interrogation must cease." *Id.* Statements following an unambiguous invocation of the right to counsel must be suppressed unless the suspect subsequently "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984); *accord Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

"But to invoke the right to counsel, the suspect must make a clear and unambiguous statement." *Hampton*, 885 F.3d at 1019. Determining whether a statement is clear and unambiguous is an objective inquiry. *United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009). "[A] reasonable police officer in the circumstances" must be able to "understand the statement to be a request for an

attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Id.* "In determining whether a suspect clearly invoked the right to counsel, th[e] court considers" both (1) "the statement itself" and (2) "the surrounding context" (*Hampton*, 885 F.3d at 1019)—specifically, the "prior context" of the discussion leading up to the statement (*United States v. Hunter*, 708 F.3d 938, 945 (7th Cir. 2013)).

The Court begins with the words of Chatman's statement itself: "I think I need, uh, somebody else to be here with me or some'in' first. I can't do that right now." The Seventh Circuit has explained that a statement must "clearly show a present desire to consult with counsel." *Hampton*, 885 F.3d at 1019; *accord Hunter*, 708 F.3d at 943. In determining whether a statement does so, the Seventh Circuit has distinguished between "request[s for] an action (or permission to act)" and mere "observations." *Hampton*, 885 F.3d at 1020. Although no two statements are exactly alike, the Court finds that Chatman's statement falls closer to the "mere[ ] observ[ation]" category than the "specific [ ]or action-oriented" category. *See id.*

Examples of requests for action or permission to act that constitute clear and unambiguous invocations of the right to counsel include: "I want an attorney before making a deal" (*Edwards*, 451 U.S. at 479); "Can I talk to a lawyer?" and "I have to get me a good lawyer, man. Can I make a phone call?" (*Lord v. Duckworth*, 29 F.3d

5

1216, 1221 (7th Cir. 1994)); "I mean, but can I call [a lawyer] now?" (*Wysinger*, 683 F.3d at 795); "Can you call my attorney?" (*Hunter*, 708 F.3d at 944); and "Can I have a lawyer?" (*United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005)). Unlike in these examples, Chatman did not directly ask for an attorney or to call an attorney.

By contrast, courts have held that the following statements did not communicate a clear and present desire to consult with counsel: "Maybe I should talk to a lawyer" (*Davis*, 512 U.S. at 462); and "Actually, I want to change that, I haven't even gotten a chance to get a lawyer or anything" (*Hampton*, 885 F.3d at 1019). Like in these examples, Chatman's statement made an observation: "I think I need, uh, somebody else to be here with me or some'in first."

The Court finds further ambiguity when considering the component phrases in Chatman's statement separately. He started the sentence with the phrase, "I think"—words numerous courts have found to convey "indecision." *See, e.g.*, *United States v. Thousand*, 2013 WL 12099113, at *6 (W.D. Wis. June 13, 2013) (collecting cases for the proposition that "use of the word 'think' . . . fails to convey the certainty required" to "reflect a certain and present desire to consult with counsel"); *United States v. Delaney*, 443 F. App'x 122, 130 (6th Cir. 2011) ("I think I should talk to a lawyer, what do you think?" is not a clear and unambiguous invocation); *United States v. Smith*, 281 F. App'x 198, 200 (4th Cir. 2008) (same for "I think I might need to talk to a lawyer"); *Burket v. Angelone*, 208 F.3d 172, 197-98 (4th Cir. 2000) (same for "I think I need a lawyer"); *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996) (same for "I think I want a lawyer" and "Do you think I need a lawyer?").

6

Turning to Chatman's next phrase—"I need, uh, somebody else to be here with me"—the government argues in its response that it is unclear that by "somebody," Chatman meant an attorney. It is true that "somebody" is more ambiguous than the words "counsel," "attorney," or "lawyer." *See Gillmore v. Zenon*, 952 F.2d 1399 (9th Cir. 1992) ("should I be calling someone" not unequivocal invocation because it did not "specifically refer to lawyers"). But the Court agrees with Chatman that there is no magic word requirement. Considering the temporal proximity between Chatman's statement and his recitation of the portion of the advice of rights form stating, "You got a right to talk to a lawyer," Chatman's reference to "somebody" almost certainly meant counsel. *See United States v. Peters*, 435 F.3d 746, 751-52 (7th Cir. 2006) (focusing on the temporal "fit between . . . between being informed of the right and [the] statement allegedly invoking it"). The government did not meaningfully contest this point at oral argument.

At the end of the same sentence, however, Chatman again used a phrase that communicated indecision and added ambiguity: "or some'in first." Both parties at oral argument acknowledged not knowing what this phrase meant. The Court finds that a reasonable police officer could have interpreted this phrase in numerous different ways, including to mean that Chatman had not yet decided whether he wanted an attorney with him, or whether he wanted something else instead.

Chatman's next sentence was more decisive: "I can't do that right now." But, as the government points out, this sentence must be considered in context of the previous discussion. And the previous discussion was about the advice of rights

7

form. Read in that context, Chatman's statement that "I can't do that right now" easily could have been interpreted by a reasonable police officer to mean that he could not sign the form right then. And as Chatman conceded at oral argument, Chatman's signing of that form was not essential—the form is merely a device used by ATF to avoid any ambiguity. All the law actually requires is that a suspect be advised of his right "to have an attorney present." *Hampton*, 885 F.3d at 1019. Only if the suspect clearly and unambiguously "invokes his right to counsel" after being advised of his rights must "the interrogation . . . cease." *Id*. Thus, the fact that Chatman's most decisive words—"I can't do that right now"—fairly can be construed not as refusing to talk without counsel, but as refusing to sign the advice of rights form, supports a finding that Chatman did not clearly and unambiguously invoke his right to counsel.

In this respect, the Court finds the Seventh Circuit's analysis of the context preceding the statement at issue in *Hampton* instructive. In *Hampton*, the Seventh Circuit emphasized that "[i]n the same breath as his request to stop recording, Hampton observed that he had not gotten a lawyer." *Id*. at 1020. The officers had just "informed Hampton that they were recording the conversation." *Id*. at 1018. Thus, "[a] reasonable officer could have concluded that in making his statement, Hampton was explaining why he did not want to have the interview recorded." *Id*. Although Hampton also could have "intended to invoke his right to counsel and rescind his permission to record the interview," the Seventh Circuit found the fact

"that there is more than one interpretation" to "reinforce[ ] the conclusion that his statement was ambiguous." *Id*.

Just as the statement in *Hampton* came in the context of a discussion about permission to record the interview, Chatman's statement came in the context of a discussion about signing the advice of rights form. It was directly after the officer asked Chatman to "sign that paper right there" that he made the statement. A reasonable officer therefore could have interpreted Chatman to be focused primarily on whether or not to sign the form, as opposed to whether or not to talk without counsel present. The fact that the context supports "more than one interpretation only reinforces the conclusion that his statement was ambiguous." 885 F.3d at 1020.

In his briefs and at oral argument, Chatman focused heavily on the officer's conduct after Chatman's statement—including not clarifying the meaning of the statement, and instead asking basic biographical questions before again pushing the issue of signing the form, which Chatman says "lull[ed]" him "into a sense of familiarity, despite his initial refusal to speak." R. 210 at 4. But, as the Seventh Circuit has made clear, only "prior context"—not subsequent context—is relevant to the assessment of whether an invocation was unambiguous. *Hunter*, 708 F.3d at 945 (citing *Smith*, 469 U.S. at 98 (explaining that "circumstances leading up to the request" can "render it ambiguous," but "an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked")). Accordingly, what happened after the statement is irrelevant. *But see Hunter*, 708 F.3d at 953 (Tharp, J., dissenting) (disagreeing with majority's reading

9

of *Smith*, and opining that subsequent responses to an officer's questions that do not constitute interrogation are properly considered "in assessing whether [the suspect] was invoking his right to counsel").

Even if the Court were to consider the subsequent context, it would not change this Court's conclusion. In discussions following the statement in question, Chatman continued to refuse to sign the advice of rights form (supporting the government's interpretation that this was his focus all along), but also affirmatively agreed to talk after another Miranda warning without any mention of wanting an attorney.

The Court agrees with Chatman that the officers questioning him would have been well-advised to clarify the meaning of Chatman's statement, "I think I need, uh, somebody else to be here with me or some'in' first." As the Seventh Circuit and Supreme Court have explained, "'when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney.'" *Wysinger*, 683 F.3d at 795 (quoting *Davis*, 512 U.S. at 461).

There is, however, no requirement that police engage in this practice. *See id.* (no requirement to ask "questions clarifying" ambiguous statement); *Shabaz*, 579 F.3d at 818 (same). Because Chatman made only an equivocal or ambiguous statement, "there [wa]s no requirement that questioning end." *See, e.g., Wysinger*, 683 F.3d at 793 ("If a suspect makes an equivocal or ambiguous reference to a lawyer," even "a reference that a reasonable officer would interpret as a statement

that the suspect *might* be invoking the right to counsel, there is no requirement that questioning end."). Thus, there is no basis for suppressing the June 2016 interview statements based on an invocation of Chatman's right to counsel.

## Conclusion

For these reasons, the Court denies Chatman's motion to suppress based on his alleged invocation of his right to counsel [210].

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 28, 2018